IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAM ANKELE,                          :        CIVIL ACTION

            Plaintiff             :

        v.                          :

MARCUS G. HAMBRICK,                   :

           Defendant.            :        NO.    02-4004

## **ORDER**

AND NOW, this        day of              , 2003, upon consideration of Defendant's Renewed Motion for Summary Judgment, and Plaintiffs' response thereto, Defendant's Renewed Motion for Summary Judgment is GRANTED.  Judgment is entered in favor of defendant Marcus G. Hambrick and against plaintiff.  This action is DISMISSED in its entirety.

BY THE COURT:

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAM ANKELE,                    :        CIVIL ACTION

      Plaintiff                    :

    v.                              :

MARCUS G. HAMBRICK,             :

      Defendant.                   :        NO.    02-4004


**DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Trooper

Hambrick moves the Court to enter summary judgment.  Based upon the record in this matter,

Defendant Trooper Hambrick is entitled to judgment in his favor as a matter of law on the merits

or on the basis of his immunity from suit.  The documents identified in the attached Exhibit List

are submitted in support of this motion.

                                 D. MICHAEL FISHER
                                 ATTORNEY GENERAL


                  BY:  <u>s// Theodore E. Lorenz</u>
                        Theodore E. Lorenz
                        Deputy Attorney General
                        Identification No. 67795

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2982

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM ANKELE | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| MARCUS G. HAMBRICK, | : | |
| Defendant. | : | NO.   02-4004 |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

<u>STATEMENT OF THE CASE</u>

Plaintiff, Adam Ankele, filed a complaint against Pennsylvania State Police Trooper

Marcus Hambrick, alleging violations of the Fourth and Fourteenth Amendments to the U.S.

Constitution arising out of a State Police response to an accident scene on February 12, 2001.

Trooper Hambrick filed an Answer denying plaintiff's claims and asserting his qualified

immunity from suit.  Plaintiff's initial motion for summary judgment was granted as to plaintiff's

Fourth Amendment excessive force claim set forth in Count 2 of the complaint, but denied as to

the balance.  Defendant filed a motion for reconsideration, which the Court granted as to

plaintiff's Fourteenth Amendment <u>Brady</u> claim under Count 3 of the complaint.

On the day of trial in this matter, plaintiff's counsel was granted leave to amend the

complaint to include a malicious prosecution claim.  Trial was adjourned and plaintiff's counsel

filed an amended complaint asserting an illegal arrest claim and malicious prosecution claim.

Trooper Hambrick filed an answer denying the allegations and claims set forth in the amended

complaint and asserting his qualified immunity from suit.  Based upon the record in this matter,

Trooper Hambrick now moves for summary judgment.

STATEMENT OF FACTS

1.    Adam Ankele left work at around 4:00 p.m. on February 12, 2001. (Ankele test., pg.

7); (Ankele dep., pg. 9).  Ankele went directly from work to a bar/social club in Allentown,

Pennsylvania, where he stayed until around 6:00 p.m. (Ankele test., pg. 7, 26); (Ankele dep., pg.

14-15).

2.    While at the bar, Ankele drank beer, but did not eat any food. (Ankele dep., pg. 16,

21).  The bartender, Jonathan Christman, testified during his deposition that Ankele drank 2-3

beers and had 2-3 shots of Gold Schlager. (Christman dep., pg. 26).  Christman further testified

that Ankele would usually drink 2-3 shots of liquor and 2-3 beers after work. (Christman dep.,

pg. 16-17).    The bar/social club is located right behind Ankele's place of work. (Christman

dep., pg. 17-18).  Ankele previously testified that it is a couple of blocks from his work. (Ankele

dep., pg. 9).

3.    After leaving the bar, and around 6:30 p.m. that evening, Ankele crashed into a car

stopped at a red light at the intersection of Tilghman Street and Blue Barn Road, in Upper

Macungie Township. (Ankele Dep., Exhibit 2, pg. 8, 25); (Ankele test., pg. 11).

4.    After hitting the car, Ankele left the scene. (Wieder test., pg. 9.); (See also Ankele

Dep., pg. 32-33, 72).

5.    A witness to the accident, Michael Wieder, observed Ankele flee the scene,

followed him, and then brought him back . (Wieder test., pg. 9, 21, 22); (Ankele Dep, pg. 74).

6.    Mr. Wieder previously testified that Ankele's driving was "completely out of

control" and that Ankele left the accident scene after inflicting "heavy damage" on the car he hit.

(Wieder Dep., pg. 6, 9-10).  Mr. Wieder, an automotive mechanic, described the other vehicle as

2

a "total loss". (Wieder Dep., pg. 12).  Mr. Wieder testified that he took upon himself to confront

Ankele because he saw Ankele leave the scene, get out of his truck, and head east on Memorial

Drive. (Wieder Dep., pg. 7-8).  Mr. Wieder described Ankele as trying to run away from the

scene, but not doing well. (Wieder Dep., pg. 9, 22).   Ankele started to slow down once he

realized that Mr. Wieder was behind him. (Wieder Dep., p 9).  When Mr. Wieder caught up to

him, Mr. Wieder stayed back a bit because he was not sure what Ankele was capable of doing.

(Wieder Dep. 9, 26).  Ankele told him that he had been drinking and that he was worried about

losing his license. (Wieder Dep., pg. 10, 23).   It also appeared to Mr. Wieder that Ankele had

been drinking. (Wieder Dep., pg. 9-10, 26).

7.    Pennsylvania State Police Trooper Hambrick was dispatched to the scene.

(Hambrick Dep., pg. 5-6); (Jan. 18 Notes of Testimony, pg. 7-11).

8.    Shortly after Trooper Hambrick arrived at the scene, he observed Ankele,

accompanied by Mr. Wieder, walking, with a staggered gait, across the roadway. (Hambrick

Dep., pg. 12, 40-41); (Jan. 18 Notes of Testimony, pg. 12-13); (See also Ankele Dep., pg. 68,

104, and Exhibit 1).

9.    Ankele says he stood near Trooper Hambrick's patrol car for a few minutes,

smoking a cigarette, when Trooper Hambrick approached him and asked if he was the driver of

the other vehicle. (Ankele test., pg. 17-19).  Ankele said yes. (Ankele test., pg. 19).

10.    Trooper Hambrick smelled alcohol on Ankele's breath and observed that Ankele's

eyes were red and bloodshot.  (Hambrick Dep., pg. 19, 40-41); (Jan. 18 Notes of Testimony, pg.

13-14); (Ankele Dep., pg. 104-106).  Ankele admitted to both Trooper Hambrick and to Mr.

Wieder that he had been drinking prior to the accident. (Hambrick Dep., pg. 23); (Ankele Dep., pg. 69, 105, and Exhibit 1); (Wieder test., pg. 10, 23) .

11.    Ankele says that when he stepped away from Trooper Hambrick, he was taken into custody. (Ankele test., pg. 19); (See Hambrick Dep., pg. 25-28).  Ankele was belligerent and was cursing and yelling. (Hambrick Dep., pg. 29-30, 40-41); (Jan. 18 Notes of Testimony, pg. 15-19); (Ankele Dep., pg. 41).

12.    Ankele was taken back to the State Police Barracks at Fogelsville for a breath test. (Hambrick Dep., pg. 43); (Ankele Dep., pg. 47-48).

13.    Ankele provided one breath sample which registered .248. (Hambrick Dep., pg. 57, 77-78); (Breath Operation Log); (Winterbottom Report).

14.    Although given several opportunities, Ankele failed to provide a second breath sample to complete the test sequence. (Hambrick Dep., pg. 60, 62-63).

15.    Trooper Hambrick treated Ankele as a refusal and turned the breathlyzer off. (Hambrick Dep, pg. 65);  (Ankele Dep., pg. 112-113).

16.    As a result of turning off the breathylzer, no receipt was produced from the machine. (Report of Corporal Winterbottom); (Corp. Winterbottom dep., pg. 24, 42, 76).

17.    Ankele was processed and then picked up by his wife.(Ankele dep., pg. 58). Ankele testified that he was at the police barracks for about 30 to 45 minutes, twenty minutes of which was spent waiting for his wife to pick him up. (Ankele dep., pg. 58).

18.     Ankele testified that he went straight home and then called his friend and bartender, Jonathan Christman to discuss how much he had to drink. (Ankele dep., pg. 20, 61). Christman says that Ankele told him he had been arrested and asked Christman for his help.

4

(Christman dep., pg. 39, 43).   Ankele returned to the scene of the accident the following day to pick up his truck. (Ankele dep., pg. 61).

19.    On March 9, 2001, a complaint, along with an affidavit of probable cause, was filed against Ankele charging him with several motor vehicle violations, including driving under the influence. 75 Pa.C.S. 3731(a)(1); (Ankele Dep., Exhibit 1).[1]   A summons was then issued requiring Ankele to appear at a preliminary hearing in connection with the charges. (Ankele dep., pg. 64).

20.    On August 8, 2001, the Lehigh County Prosecutor's Office filed an Information against Ankele charging him with being under the influence of alcohol to a degree which rendered him incapable of safe driving. 75 Pa.C.S.A. 3731(a)(1); (Information filed on August 8, 2001).   Ankele was not tried under Section 3731(a)(4) relating to blood alcohol content, and the issue of Ankele's refusal to provide a complete breath test was not raised before the jury. (Jan.18 Notes of Testimony, pg. 1-22).  Indeed, Ankele's counsel specifically decided to forgo and waive that argument at trial. (Jan. 18 Notes of Testimony, pg. 50-65).   Ankele was found not guilty of violating 75 Pa.C.S.A. 3731(a)(1).

21.    Ankele's license was also not suspended.  (Ankele Dep., pg. 122-123).

---

[1]   75 Pa.C.S. § 3731(a) provides that "[a] person shall not drive, operate or be in actual physical control of the movement of any vehicle: (1) while under the influence of alcohol to a degree which renders the person incapable of safe driving."

5

SUMMARY JUDGMENT STANDARD

Summary judgment is authorized by Fed.R.Civ.P. 56 which states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Material" facts are those that might affect the outcome of the suit under the substantive law governing the claims made. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" in light of the burdens of proof required by substantive law. Id. at 248-250, 252-255. Stated another way, the court must enter summary judgment against a nonmoving party who fails to make a factual showing sufficient to permit a reasonable jury to find an element essential to that party's case and on which that party bears the burden of proof. Celotex Corp., 477 U.S. at 323.

Evidence that is "merely colorable" or "not significantly probative" will not defeat the motion. Anderson, 477 U.S. at 249-252, 256, 257; Miller v. City of Philadelphia, 174 F.3d 368, 377 (3d Cir. 1999). Similarly, the "mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for plaintiff." Anderson, 477 U.S. at 252; Colburn v. Upper Darby Township, 946 F.2d 1017, 1020 (3d Cir. 1991).

LEGAL ARGUMENT

**I. JUDGMENT SHOULD BE GRANTED IN FAVOR OF TROOPER HAMBRICK ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SINCE IT FAILS AS A MATTER OF LAW.**

In Counts Three and Four of the amended complaint, plaintiff asserts claims of malicious prosecution arising out of the license suspension proceedings and the state court trial. Plaintiff's claim fails as a matter of law, and judgment should be entered in favor of the defendant.

The U.S. Supreme Court in Albright v. Oliver, 510 U.S. 266, 275 (1994), held that a malicious prosecution claim cannot be asserted as substantive due process claim under the 14th Amendment to the U.S. Constitution, and there is no procedural due process claim asserted by plaintiff. [2] See Merkle v. Upper Dublin School District, 211 F.3d 782, 792 (3d Cir. 2000); Britton v. Maloney 196 F.3d 24, 28 (1st Cir. 1999); Mantz v. Chain, 239 F. Supp.2d 486, 501 (D.N.J. 2002)(interpreting Albright to "clearly foreclose[] malicious prosecution claims which rely exclusively on the substantive component of the Fourteenth Amendment's Due Process Clause."); Bristow v. Clevenger, 80 F.Supp.2d 421, 429 (M.D. Pa. 2000). In Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998), the court observed that Albright implies that prosecution without probable cause is not, in and of itself, a constitutional tort. Id. at 222.

However, if a malicious prosecution claim is permitted, then it can only be examined under the Fourth Amendment to the U.S. Constitution, and a threshold question to answer is whether there was a "seizure" arising from the criminal prosecution. Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002); Gallo, 161 F.3d at 222; Britton, 196 F.3d at 29; Mantz, 239 F. Supp.2d

---

[2]  In addition, to the extent this claim is interpreted as a state law claim, Trooper Hambrick is entitled to sovereign immunity from suit. 1 Pa.C.S. § 2310. See also 42 Pa. C.S. § 8522; Garcia v. Micewski, 1998 WL 547246 *13 (E.D.Pa., Aug. 24, 1998)

at 501; <u>Bristow</u>, 80 F.Supp.2d at 429; <u>Garcia v. Micewski</u>, 1998 WL 547246, *6 (E.D.Pa., Aug. 24, 1998)(granting summary judgment in favor of defendants since "there is no Fourteenth Amendment right to be free from malicious prosecution").   "Not all Fourth Amendment seizures can serve as the basis for a malicious prosecution claim." <u>Mantz</u>, 239 F. Supp. 2d at 501.   In other words, a warrantless arrest cannot form the basis for the seizure, rather, the "[plaintiff] must show that he suffered a seizure as a consequence of a legal proceeding," such as an arrest warrant or subsequent charging document. <u>Id</u>. at 501-502 (citing to <u>Gallo</u>, 161 F.3d at 222; <u>Nieves v. McSweeney</u>, 241 F.3d 46, 54 (1st Cir. 2001) and <u>Estate of Smith, v. Marasco</u>, 227 F. Supp.2d 322, 345-47 (E.D.Pa. 2000)).

For example, in <u>Mantz</u>, <u>supra</u>, the plaintiff was arrested without a warrant for engaging in disorderly conduct. <u>Id</u>. at 502.  The plaintiff was released on his own recognizance and a complaint was filed later that day. Plaintiff was then required to appear in court pursuant to a summons. <u>Id</u>.  The court, in granting defendant's motion for summary judgment, concluded that plaintiff was not seized as a consequence of the legal proceedings and therefore, could not maintain a malicious prosecution claim. <u>Id</u>. at 502-503.  In particular, the court found that plaintiff's appearance in court was not "secured by means of bail, a warrant, incarceration, or restrictions on his travel." <u>Id</u>. at 502.   The court further found that a summons requiring a criminal defendant to appear in court does not amount to a seizure. <u>Id</u>. at 503.

In <u>Mantz</u>, the court reviewed the Third Circuit's decision in <u>Gallo</u>, <u>supra</u>, in which that court found that Gallo had been seized as a result of the post-indictment restrictions on his liberty.  Although the <u>Gallo</u> court stated that its finding was a "close question", it concluded that Gallo was seized because he was required to post $10,000 bond; to attend all court hearings; to

8

contact pre-trial services on a weekly basis; and to refrain from traveling outside of New Jersey and Pennsylvania.  Id. at 501 (citing to Gallo, supra. at 222).  The Mantz court made two observations regarding the Gallo decision: first, that restrictions less than those in Gallo will be insufficient to trigger the protections of the Fourth Amendment, and second, that the practical effect of the Gallo case is that anyone who has to go to court can claim that they were seized and trigger the protections of the Fourth Amendment which would "effectively eliminate any meaningful distinction between a Fourth Amendment malicious prosecution claim and the common law tort, a result which would appear to seriously undermine the Supreme Court's decision in Albright."  Mantz, supra at 503 (citing to Bristow, 80 F.Supp.2d at 430).

By way of further example, in Bristow, supra, the plaintiff claimed that she was seized because she was processed by being fingerprinted and photographed and had to appear in court. Id. at 80 F.Supp.2d at 429.  The court, in granting defendant's summary judgment motion on the plaintiff's malicious prosecution claim, held that the plaintiff was not seized since she was released on her own recognizance, her "freedom of movement was not confined to any geographic area", and showing up at court was insufficient. Id. at 430.   Similarly, in Garcia v. Micewski, 1998 WL 547246 (E.D. Pa., Aug. 24, 1998), the court found the plaintiff's requirement that she appear in court and submit to orders of the court, as required by the bond she posted, were insufficient to constitute a seizure to establish a Fourth Amendment claim, especially coupled with the fact that the plaintiff, after her initial arrest and release, was never incarcerated again on the charges and her conditions of release were never changed. Id. at *10. Likewise, in Britton v. Maloney 196 F.3d 24, 30 (1st Cir. 1999), the court held that the plaintiff's

9

mandatory appearance in court was insufficient to establish a seizure within the meaning of the Fourth Amendment.

Just as in the cases discussed above, Ankele was not seized as required under the Fourth Amendment. Ankele was taken in custody on February 12, 2001 and then released after spending approximately 30-45 minutes at the state police barracks. A summons and complaint was issued on March 9, 2001 charging Ankele with various motor vehicle violations and requiring his attendance in court. And while Ankele had to post a nominal unsecured bond, Ankele's movement was not restricted to a geographic location, his license was not suspended, and he was never incarcerated. These factors are insufficient to establish a seizure to trigger a Fourth Amendment claim, and his malicious prosecution claim should be dismissed.

Even assuming the Fourth Amendment was implicated, Ankele cannot satisfy the elements necessary to establish a "malicious prosecution" claim, i.e. the "institution of criminal charges without probable cause." Garcia, 1998 WL 54246 at * 8. Here, Ankele asserts a malicious prosecution claim in connection with the license proceeding and in connection with the Section 3731 charge.

A license proceeding is not a criminal trial for purposes of a malicious prosecution claim and therefore cannot be the subject of such a claim. Commonwealth v. Witsch, 168 A.2d 772, 775 (Pa. Super. 1961)("[a] hearing on the question of suspension is not a criminal procedure."); State v. Kamalski, 429 A.2d 1315, 1318 (Del. Super. 1981)("Courts have consistently characterized these procedures as civil administration procedures and rejected the contention that they are criminal proceedings."); Broughton v. Warren, 28 A.2d 625, 629 (Del. Ch. 1971)( the "suspension of a driver's license ... is not to punish the driver but to protect the public from those

10

who have demonstrated that their driving presents a hazard to life and property.")(citing

Bungardeanu v. England, 219 A.2d 104 (D.C.Ct.App. 1966)).[3]

As to the charge of being incapable of safe driving, which is criminal in nature, Ankele must prove that there was insufficient probable cause to prosecute him for driving under the influence of alcohol to a degree which rendered him incapable of safe driving. 75 Pa.C.S. 3731(a)(1). Plaintiff was not tried with driving with a blood alcohol content over the legal limit, but rather with being incapable of safe driving because of his admitted drinking prior to hitting another vehicle stopped at a traffic light, smelling of alcohol, having red, blood shot eyes, leaving the scene of the accident, walking with a staggered gait, and his belligerent conduct. (Hambrick Dep., pg. 40-41); (Wieder test., pg. 9-11); (Ankele Dep., pg. 68-72, 104-107).

The Leigh County Prosecutor's Office made an independent determination to charge and prosecute Ankele based upon the evidence discussed above. In so doing, the prosecutor's office filed an Information on August 8, 2001, charging Ankele with a violation of 75 Pa.C.S. 3731(a)(1) resulting from the incident on February 12, 2001. (See Information attached hereto). The filing of the Information by the prosecutor's office "breaks the causal chain and insulates the officer from a section 1983 suit based upon lack of probable cause for an arrest or prosecution." Garcia, 1998 WL 547246 at *9 (quoting Rhodes v. Smithers, 939 F.Supp. 1256 (S.D.W.Va. 1995), aff'd, 91 F.3d 132 (4th Cir. 1996)(and citing to Merrero v. Micewski, 1998 WL 414274 at *6 (E.D. Pa., July 22, 1998)).

_____

[3] Ankele also testified during deposition that he does not have any facts to support his allegation that Trooper Hambrick acted to deprive him of his license, an event which also did not occur. (Ankele dep., pg. 115).

11

In addition, there is a presumption that the Lehigh County Prosecutor's Office acted independently, which presumption Ankele cannot defeat. Morgan v. City of Chino, 1996 WL 103803 *1 (9th Cir. 1996)(citing Smiddy v. Varney, 803 F.2d 1469, 1471 ((9th Cir. 1986)) ("[w]hen a Plaintiff fails to overcome the presumption that the prosecutor exercised independent judgment in his or her decision to prosecute, investigating officers are immunized from any damages that may have been suffered by the plaintiff."). Here, Ankele does not have even a scintilla of evidence to support a claim that the prosecutor's office either did not or could not act independently in deciding to prosecute him. Even if Ankele's unsupported and outlandish allegation about the destruction of breath test receipts were believed, Trooper Hambrick still had probable cause to detain him and then file a complaint against him based upon the overt, physical signs of intoxication, i.e. the admitted drinking, the odor of alcohol, the staggered gait, the red blood shot eyes, his demeanor and conduct, and the accident. And Ankele's own deposition testimony demonstrates that he either does not or cannot reasonable dispute that those physical indicators existed and the testimony of Michael Wieder also corroborates those indicators. See Commonwealth v. Loeper, 663 A.2d 669, 673-674 (Pa. 1995)("[s]ection (a)(1) is a general provision and provides no restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving."); Commonwealth v. Phillips, 700 A.2d 1281, 1288 (Pa. Super. 1997); Commonwealth v. Benson, 421 A.2d 383 (Pa. Super. 1980) (probable cause exists for arrest where police officer called to scene to fill out accident report observed appellant's stumbling walk and odor of alcohol on breath). That is the same evidence the prosecution relied upon in presenting its case to the jury. (Jan. 18 Notes of Testimony, pg. 1-22). The prosecution

12

did not raise the issue of Ankele's failure to provide a complete breath test.  Indeed, Ankele's legal counsel decided not to raise it after an extensive side bar with the Court. (Jan. 18 Notes of Testimony, pg. 50-65).  Consequently, there was clearly probable cause supporting Ankele's prosecution in the Lehigh County Court of Common Pleas and there is no evidence to suggest that the prosecutor's office lacked independent judgment in deciding to pursue the matter.

It an attempt to salvage a claim, Ankele makes the absurd and unfounded allegation that breath test receipts were destroyed during his failed attempt to provide a breath test.  The first deficiency with that assertion is that no receipts were produced since the breathlyzer was prematurely turned off by Trooper Hambrick, and operator error does not trigger a constitutional claim. Daniels v. Williams, 474 U.S. 327, 323-33 (1986)(negligent conduct does not support a constitutional claim).  That fact is confirmed by the machine itself and the tests run by Corporal Winterbottom.  As Corporal Winterbottom's report and deposition testimony demonstrates, she performed as accuracy test on the breathylzer on February 2, 2001 which produced receipt number 97.  She then performed another accuracy test on March 9, 2001 which produced sequential receipt number 98. (See Report of Corp. Winterbottom).   Since Ankele's test was the only one in between those time periods, if a test recorded or a receipt or receipts were produced, the March 9, 2001 accuracy test would have been a number other than 98.   Ankele cannot reasonable dispute the conclusion reached by Corporal Winterbottom, and indeed, does not challenge it through any rebuttal expert testimony.

The second deficiency is that there is no evidence of exculpatory evidence, just impermissible speculation and conjecture.  Ankele testified at his deposition that he did not see any results from his attempts at the breath test. (Ankele dep., pg. 50-51).  Thus, he cannot

13

credibly claim that anything was exculpatory. To the contrary, the breath log shows that his one breath sample registered at .248, but one breath sample does not make a complete test. (Winterbottom dep., pg. 66). Again, Ankele cannot offer any credible evidence to contradict this and Ankele cannot rely upon speculation and conjecture to support his baseless and unfounded claim of malicious prosecution.

The third deficiency is that Ankele's exculpatory evidence claim is constitutionally immaterial as discussed in defendant's reconsideration motion which is fully incorporated herein by reference. Strickler v. Greene, 527 U.S. 264, 280 (1999) (exculpatory evidence is only constitutionally material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.")(quoting United States v. Bagley, 473 U.S. 667, 676 (1985)).

In addition, as stated in defendant's previous submission, Trooper Hambrick is entitled to absolute immunity in connection with his participation in the state court proceedings. Briscoe v. LaHue, 460 U.S. 325 (1983); Imbler v. Pachtman, 424 U.S. 409, 439 (1976); Brawer v. Horowitz, 535 F.2d 830, 837 (3d Cir. 1976); Rashid v. Kite, 934 F.Supp. 144, 147 (E.D.Pa.,1996)("doctrine of witness immunity . . . provides that witnesses are absolutely immune from suits arising from testimony given in the course of a judicial proceeding."); Iseley v. Bucks County, 549 F.Supp. 160, 167 (D.C.Pa., 1982). See also Burns v. Reed, 500 U.S. 478 (1991) (prosecutors are absolutely immune from § 1983 liability for their participation in probable cause hearings); Ernst v. Child & Youth Services of Chester County, 108 F.3d 486, 495 (3rd Cir. 1997).

Based on the foregoing, plaintiff's malicious prosecution claims should be dismissed and summary judgment entered in favor of Trooper Hambrick.

### II.  PLAINTIFF'S ILLEGAL ARREST CLAIM FAILS SINCE THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF ON  FEBRUARY 12, 2001.

Ankele also claims that his arrest for driving under the influence of alcohol was illegal under the Fourth Amendment to the U.S. Constitution.  This claim fails as a matter of law and summary judgment is appropriate in favor of Trooper Hambrick.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000) (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir.1995)).  Probable cause need only exist as to *any* offense that could be charged under the circumstances.  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  In addition, " . . . the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). Moreover, "the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.  Id.

"In determining whether probable cause exists, the court should assess whether the objective facts available to the arresting officers at the time of the arrest were sufficient to justify a reasonable belief that an offense had been committed." Sharrar, 128 F.3d at 817. Courts apply a common sense approach based on the totality of the circumstances." Hughes v. Shestakov, 2002 WL 1742666 *2 (E.D. Pa., July 22, 2002)(citing to Paff v. Kaltenback, 204 F.3d 425, 436

15

(3d Cir. 2000)).   The burden of proving that an arrest lacked probable cause rests with the plaintiff, and as discussed below, Ankele cannot meet this burden.

By way of example, in the <u>Hughes</u> case, the plaintiff claimed that he was falsely arrested for a non-felony offense committed outside the presence of the arresting municipal police officers. <u>Id</u>. at *2.  The offense involved damaging a windshield.  <u>Id.</u>  The police arrested plaintiff based upon a witness statement and the observable damage.  <u>Id</u>.  The court held that the officers had sufficient probable cause to arrest the plaintiff and granted defendants' motion for summary judgment. <u>Id</u>.  The court also found that the officers, even if they erred in their probable cause determination, were entitled to qualified immunity from suit. <u>Id</u>.

Here, while Ankele challenges the probable cause underlying his arrest for the driving under the influence of alcohol on February 12, 2001, he, again, does not challenge the probable cause for the balance of the charges and judgment should be entered as a matter of law in favor of Trooper Hambrick on this count.  While this Court previously dismissed this assertion, arguing that Trooper Hambrick had to be present during the violation in order to make a warrantless arrest, that argument is misguided since Ankele was not arrested without a warrant on those charges, but as a result of the March 9, 2001 summons and complaint supported by an affidavit of probable cause. (<u>See</u> Police Criminal Complaint attached hereto).

In addition, just as in <u>Hughes</u>, <u>supra</u>, the charges against Ankele for leaving the scene of the accident and for failing to drive at safe speed are supported by witness statements and Trooper Hambrick's observations.   When Trooper Hambrick arrived at the scene of the accident, Ankele had left the immediate scene and had to be escorted back by Mr. Wieder, who previously testified that Ankele's driving was "completely out of control" and that Ankele left

the accident scene after inflicting "heavy damage" on the car he hit. (Wieder Dep., pg. 6, 9-10); (Police Accident Report).  Mr. Wieder described Ankele as trying to run away from the scene, but not doing well. (Wieder Dep., pg. 9, 22).  Trooper Hambrick could also observe upon his arrival that neither Ankele nor his vehicle were at the immediate accident site, but rather off in a parking lot area away from the scene. (Police Accident Report).  Ankele was also charge with failing to drive at safe speed since he was clearly unable to stop in time to prevent hitting the car stopped at the red light in front of him. (Police Accident Report).  Indeed, Ankele admits that he was not paying attention at the time of the accident and, as a result, struck the car in front of him before coming to a stop. (Ankele dep., pg. 25).

Furthermore, and as discussed in connection with Ankele's malicious prosecution claim, Trooper Hambrick had probable cause to file a complaint against Ankele for driving under the influence of alcohol so as to render him incapable of safe driving.  The record shows, and Ankele cannot reasonable dispute, that he hit a car that day, left the scene of the accident, had been drinking prior to the accident, Trooper Hambrick detected alcohol on Ankele's breath and person, Ankele's eyes were red and blood shot, and Ankele was observed walking with a staggered gate. (Hambrick Dep., pg. 40-41); (Wieder test., pg. 9-11); (Ankele Dep., pg. 68-72, 104-107).  Trooper Hambrick had more than enough information to issues a complaint against Ankele for driving under the influence of alcohol. 75 Pa.C.S. § 3731(a)(1). See Commonwealth v. Loeper, 663 A.2d 669, 673-674 (Pa. 1995)("[s]ection (a)(1) is a general provision and provides no restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving."); Commonwealth v. Phillips, 700 A.2d 1281, 1288 (Pa. Super. 1997);

<u>Commonwealth v. Benson</u>, 421 A.2d 383 (Pa. Super. 1980) (probable cause exists for arrest where police officer called to scene to fill out accident report observed appellant's stumbling walk and odor of alcohol on breath).  As a result, summary judgment is appropriately granted in favor of Trooper Hambrick.

### III.  SUMMARY JUDGMENT SHOULD ALSO BE GRANTED IN FAVOR OF TROOPER HAMBRICK SINCE HE IS ENTITLED TO QUALIFIED IMMUNITY FROM SUIT.

At the minimum, Trooper Hambrick is entitled to qualified immunity from suit. <u>Saucier v. Katz</u>, 121 S.Ct. 2151 (2001).  In <u>Saucier</u>, the Supreme Court set forth the analysis which a court must undertake early in the proceedings to determine the issue of qualified immunity. <u>Id</u>. at 2156. The Supreme Court stated that the initial inquiry into qualified immunity is whether "the facts alleged show the officer's conduct violated a constitutional right." <u>Id</u>. (citing to <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).  If no constitutional right would be implicated on the facts alleged, then the inquiry ends. <u>Id</u>.  If, however, a violation could be made out, then "the next, sequential step is to ask whether the right was clearly established." <u>Id</u>.  To answer that question, the "relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id</u>.

A goal of qualified immunity is to protect public servants from the time and expense of litigation and the threat of personal monetary liability, which divert officials' energies from the public's business and inhibit them in the discharge of their duties. <u>Harlow v. Fitzgerald</u>, 475 U.S. 800, 814 (1972). Moreover, qualified immunity is an issue of law to be decided by the court, and should be determined as early as possible because the immunity is an immunity from suit, not

18

just a defense to liability. <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991); <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).

Here, Ankele's claim fails the two-part test set out in <u>Saucier</u>. As more fully discussed above, the record does not support a violation of the U.S. Constitution or that Trooper Hambrick's conduct under the circumstances violated clearly established law. The reality is that Ankele filed this suit because he felt inconvenienced by the process, which process was initiated because Ankele crashed into a car after drinking at a bar; however, being inconvenienced does not trigger a constitutional right. (Ankele Dep., pg. 124).

In sum, Trooper Hambrick, at a minimum, is entitled to qualified immunity from suit and plaintiff's complaint should be dismissed. <u>Saucier</u>, 121 S.Ct. at 2151; <u>Nolin</u>, 207 F.3d 1258.

### IV.    TO THE EXTENT TROOPER HAMBRICK IS SUED IN HIS OFFICIAL CAPACITY, JUDGMENT SHOULD BE ENTERED IN HIS FAVOR.

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) a person deprived him of a federal right, and (2) the person who deprived him of that right acted under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1998). Not only does the record fail to establish a violation of a federal right, as more fully discussed above, but State employees in their official capacities are not "persons" subject to suit under § 1983. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70-71 (1989). State Troopers are also entitled to Eleventh Amendment immunity from suit in their official capacities. U.S. Const. amend. XI. <u>See</u> <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261 (1997) and <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54 (1996). As a result, summary judgement should be entered in favor of Trooper Hambrick to the extent he is sued in his official capacity.

<u>CONCLUSION</u>

The Supreme Court has stated that bare, unsupported allegations of wrongdoing cannot suffice to maintain a Constitutional claim and "should not suffice to subject government officials either to the costs of trial or to the burdens of broad reaching discovery." <u>Crawford-El v. Britton</u>, 118 S.Ct. 1584, 1592 (1998) (quoting in part <u>Harlow</u>, 457 U.S. at 817-818). The Supreme Court has also stated that in response to a summary judgment motion, the non-moving party must come forward with "affirmative evidence" to support his claims. <u>Id.</u> at 1598. Ankele cannot rely upon speculation, conjecture, and unsupported allegations to support his claims, although he tries.

In sum, the record shows that there is no factual or legal basis for plaintiff's claims and summary judgment should therefore be entered in favor of the defendant.

D. MICHAEL FISHER
ATTORNEY GENERAL

BY:   <u>s// Theodore E. Lorenz</u>
Theodore E. Lorenz
Deputy Attorney General
Identification No. 67795

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
(215) 560-2982

20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAM ANKELE,                          :        CIVIL ACTION

        Plaintiff                :

        v.                       :

MARCUS G. HAMBRICK,                   :

        Defendant.               :        NO.    02-4004

## CERTIFICATE OF SERVICE

I, Theodore E. Lorenz, Deputy Attorney General, hereby certify that Defendant's

Renewed Motion for Summary Judgement was filed electronically with the Clerk's Office on

August 22, 2003 and is available for viewing and downloading on the Court's Electronic Case

Filing System ("ECF"), with a copy sent by regular mail, postage prepaid, to:

    Richard Orloski, Esq.
    Orloski, Hinga, Pandaleon & Orloski
    111 North Cedar Grest Blvd.
    Allentown, PA 18104-4602


                              D. MICHAEL FISHER
                              ATTORNEY GENERAL

             BY:    s// Theodore E. Lorenz
                     Theodore E. Lorenz
                     Deputy Attorney General
                     Identification No. 67795

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
(215) 560-2982

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAM ANKELE,                    :         CIVIL ACTION

     Plaintiff               :

     v.                      :

MARCUS G. HAMBRICK,             :

     Defendant.              :         NO.    02-4004

## **DEFENDANT'S EXHIBITS TO SUMMARY JUDGMENT MOTION**

Deposition Transcript of Adam Ankele (referred to as "Ankele Dep.")

Testimony of Adam Ankele in <u>Commonwealth of Pa. v. Ankele</u>, Court of Common Pleas,
Lehigh County, Criminal Division, No. 2001/2010 (referred to as "Ankele test.")

Testimony of Michael Wieder in <u>Commonwealth of Pa. v. Ankele</u>, Court of Common Pleas,
Lehigh County, Criminal Division, No. 2001/2010 (referred to as "Wieder test.")

Deposition Transcript of Trooper Marcus Hambrick (referred to as "Hambrick Dep.")

Deposition Transcript (referred to as "Winterbottom Dep.") and Expert Report of Corporal
Kathy Winterbottom

Deposition Transcript of Jonathan Christman

Breath Test Operation Log

Notes of Testimony dated January 18, 2002

Police Criminal Complaint filed against Adam Ankele, along with Affidavit of Probable Cause

Police Accident Report

                  D. MICHAEL FISHER
                  ATTORNEY GENERAL

            BY: <u>s// Theodore E. Lorenz</u>
                  Theodore E. Lorenz
                  Deputy Attorney General
                  Identification No. 67795

OFFICE OF ATTORNEY GENERAL
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107-3603
Telephone:  (215) 560-2982