**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ADAM ANKELE** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **No. 02-4004** |
| **v.** | : | |
| | : | |
| **MARCUS HAMBRICK** | : | |
| **Defendant** | : | |
| | : | |

**MEMORANDUM OPINION**

RUFE, J.                                                     October 8, 2003

   This is a federal civil rights action brought against a Pennsylvania State Police Trooper, Marcus Hambrick ("Hambrick"), in his individual capacity. Plaintiff Adam Ankele ("Ankele") contends that Hambrick violated his Fourth and Fourteenth Amendment rights under the U.S. Constitution following a February 12, 2001 vehicular accident and subsequent investigation. Presently before the Court is Defendant Hambrick's Renewed Motion for Summary Judgment as to all of Ankele's claims. For the reasons set forth below, Hambrick's Motion for Summary Judgment is granted.

**I.      BACKGROUND**

   The following factual account is taken in a light most favorable to Ankele as he is the non-moving party on the instant motion for summary judgment. This case arises from a February 12, 2001 incident where Trooper Hambrick arrested Ankele for driving under the influence of alcohol in violation of 75 Pa. Cons. Stat. Ann. § 3731. Earlier that day, Ankele left work at 4:00 p.m. and went directly to a bar called the Rittersville Fire Company in order to meet a friend. See Ankele Deposition Transcript at 8-9 (hereinafter "Ankele Dep."). While waiting for his friend

Ankele consumed three ten-ounce glasses of beer, and ate no food. Id. at 11-12, 16, 21. When Ankele's friend did not arrive by 5:30-6:00 p.m., Ankele left the bar to go home. Id. at 15, 17, 24.

At approximately 6:30 p.m., Ankele crashed his car into the rear of another car stopped at a red light at the intersection of Tilghman Street and Blue Barn Road, in Upper Macungie Township, Pennsylvania. Ankele Dep. at 8, 25; Police Report at 1. Ankele admits that he was not paying attention to the road in front of him when he struck the other automobile at a speed of 15-20 mph. Ankele Dep. at 25-26. Ankele then drove his vehicle away from the site of impact, which was in the middle of the road, and into the parking lot of the Kuhnsville Inn, located across the street. Id. at 27, 31-32; 1/18/02 Trial N.T. of Ankele at 12 (hereinafter "Ankele Test."). A bystander who observed the aftermath of the accident, Michael Wieder, who also happens to be an automobile mechanic, described the damage to Plaintiff's vehicle as "moderate," but described the damage to the other car as "heavy" and "a total loss." 1/18/02 Trial N.T. of Michael Wieder at 6, 22. From this time forward, witness accounts of events vary, but the Court will continue to set forth Plaintiff's version, as he is the non-moving party.

Ankele exited the car, inspected the damage to his vehicle, paced back and forth, sat on a curb close to his vehicle, composing himself and smoking a cigarette. Ankele Dep. at 33; Ankele Test. at 14-15. At this time Wieder approached Ankele and asked if he was alright. Ankele Dep. at 34. Wieder testified at Ankele's trial that Ankele was walking away from the scene, perhaps attempting to leave the scene altogether, but that Ankele slowed down and stopped when he realized that Wieder was behind him. Wieder Test. at 9, 27. Ankele admits that Wieder told Ankele that he had an obligation to return to the accident scene. Ankele Dep. at 74. During this conversation, Wieder noticed nothing unusual about Ankele's speech attributable to drinking, but did say Ankele

was "rambling" because "he was just upset." Wieder Test. at 26-27. In addition, Wieder did not

smell alcohol on Ankele's breath while standing about three feet away from him, see id. at 26, but

when asked "could you tell he had been drinking?", Wieder responded that "from what I saw, I

would say he was." Id. at 10-11.

During this conversation between Ankele and Wieder, Defendant State Police

Trooper Hambrick arrived at the accident scene to investigate. Ankele Dep. at 37. Wieder then

escorted Ankele across the street and back to the site of impact. Hambrick saw both men crossing

the street, and noted that Ankele was walking with a "staggered gait." See Deposition of Marcus

Hambrick at 12, 40 (hereinafter "Hambrick Dep."). When crossing the street with Ankele, Wieder

testified that he was not paying close attention to Ankele's manner of walking because he was

looking out for oncoming traffic. Wieder Test. at 31-32.

As Ankele and Wieder crossed the street, Hambrick was speaking to the driver of the

other vehicle involved in the accident, Robert Woods. Ankele Dep. at 36; Police Report at 1. As

soon as Ankele arrived at the location of the accident, he stood by the police cruiser, smoking a

cigarette. See Ankele Test. at 18. Hambrick walked toward Ankele, and asked if he was the other

driver involved in the accident. Id. at 40. At this time Ankele began backing away from Hambrick

because he found Hambrick to be "a very intimidating person." Ankele Test. at 19. Ankele

responded "yes," and immediately thereafter Hambrick "grabbed [Ankele], threw [Ankele] on the

back of the [police] car, ripped everything out of [Ankele's] pockets and immediately handcuffed

[Ankele] and put [Ankele] in the back of the [police] car." Ankele Dep. at 40. Wieder's testimony

tends to corroborate Ankele's contention that the verbal exchange and subsequent handcuffing

occurred in a very short time span. Wieder Test. at 28 ("By the time I turned around . . . he was on

the hood of the car. . . "). Wieder testified that throughout this incident Ankele was not verbally abusive. Wieder Test. at 33. Ankele contends that he did not argue with Hambrick, although he admits saying "What are you f----ing crazy? I was just in an accident!" when Hambrick grabbed him. Ankele Dep. at 46. At some point during this brief interaction, Ankele admitted to Hambrick that he had been drinking. Hambrick Dep. at 23; Ankele Dep. at 69, 105. Ankele contends that Hambrick never asked him to perform field sobriety tests before taking him into custody. Ankele Test. at 20-21.[1]

Ankele was arrested for driving under the influence of alcohol ("DUI") in violation of 75 Pa. Cons. Stat. Ann. § 3731(a)(1); leaving the scene of an accident in violation of 75 Pa. Cons. Stat. Ann. § 3743(a); and driving at an unsafe speed in violation of 75 Pa. Cons. Stat. Ann. § 3361. Hambrick transported Ankele in custody to the Fogelsville police barracks, and asked him to submit to a "breathalyzer" test. Ankele complied with Hambrick's requests, blowing breath samples into a tube connected to a machine, the Intoximeter Alco-Sensor IV, which determines blood-alcohol content. Ankele blew four to five samples into the tube. Ankele recalls the machine's printer, the RBT IV, printed slips, or a "little white receipt," upon completion of each breath sample. When

---

[1] Officer Hambrick provides a different version of events, which the Court will summarize for purposes of demonstrating the factual disputes presented in this case. As the analysis below demonstrates, however, none of these disputes preclude summary judgment on Count 1. First, in addition to inquiring into Ankele's drinking, Hambrick claims that he asked Ankele for his driver's license, which Ankele could not produce. Hambrick Dep. at 23, 32-33. Hambrick contends that upon observing and speaking with Ankele, several factors led him to believe that Ankele was intoxicated, including "staggered gait, red, bloodshot eyes, an odor of alcoholic beverages about his breath and person, he was involved in a crash." Id. at 40. Therefore, he decided to administer field sobriety tests. Id. at 23. (However, Hambrick provided a different version of events when he testified at Ankele's preliminary hearing. There, he stated that he decided to forego field sobriety tests because he believed that he already had probable cause to arrest.) Pursuant to his ordinary procedure, Hambrick asked Ankele to bend over the police cruiser, place his hands on the hood of the police cruiser, and submit to a frisk for weapons. Ankele complied, and Hambrick began conducting a pat-down. During the frisk Ankele began to stand up and twist away from Hambrick. Hambrick found this action threatening, and so he put his weight into Ankele's back, pulled Ankele's hands behind his back, and handcuffed him. Hambrick also contends that Ankele was belligerent and cursing loudly. Id. at 23-29.

Ankele asked Hambrick what the reading was, Hambrick stated that the machine was not printing out a reading. Ankele also claims that Hambrick threw the slips of paper into the trash. Hambrick then asked Ankele to sign a refusal form. Ankele did not sign the form because he felt that he had complied with the instructions given by Hambrick. Ankele Dep. at 49-51. In total, Ankele was at the police barracks for approximately thirty to forty-five minutes, twenty minutes of which he spent waiting for his wife to pick him up. Id. at 58.

The preliminary hearing before a district justice was held on June 6, 2001. There, the district justice dismissed the charge of leaving the scene of an accident, and ordered Ankele to post a $2,000 unsecured bond. 6/6/01 Preliminary Hearing Transcript at 34 (hereinafter "Prelim. Hrg."). Ankele appeared next at his license suspension appeal hearing on January 14, 2002. He prevailed in his appeal, and his license was never actually suspended. Ankele Dep. at 122. Finally, at his January 18, 2002 trial, Ankele was found not guilty of DUI and driving at an unsafe speed. Hambrick Dep. at 100.

Ankele then filed this action under 42 U.S.C. § 1983, asserting three counts in his Complaint: (1) false arrest; (2) excessive use of force; and (3) violation of his due process rights. The case proceeded through discovery and dispositive motions, with the Court granting in part and denying in part Defendant's motion for summary judgment. See Ankele v. Hambrick, 2003 WL 21223821, 2003 U.S. Dist. LEXIS 8817 (E.D. Pa. May 7, 2003). The motion was granted as to Plaintiff's excessive force claim, but denied as to the balance. Thereafter the Court granted in part Defendant's motion for partial reconsideration as to its reasoning on Plaintiff's Fourteenth Amendment claim, but reaching the same result. See Ankele v. Hambrick, 2003 WL 21396862 (E.D. Pa. May 12, 2003). After pre-trial discussions with counsel, and upon Plaintiff's motion, the

Court granted leave to amend the complaint, and ordered further discovery. Plaintiff filed his Amended Complaint, again asserting a false arrest claim (Count 1), and adding two malicious prosecution claims related to his license suspension (Count 3) and alleged "illegal arrest and destruction of exculpatory evidence" (Count 4). Plaintiff did not reassert his excessive force claim.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. Hambrick now renews his motion for summary judgment as to all of Ankele's claims. As noted in the Court's May 13, 2003 Order [Doc. # 29], the filing of Defendant's renewed motion serves to vacate the Court's prior decisions addressing Plaintiff's Fourteenth Amendment claim. Having had the benefit of a more complete record and developed argument, the Court will also revisit Plaintiff's false arrest claim. In short, today's decision will address all issues anew.

## II.    SUMMARY JUDGMENT STANDARD

The Court will enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party has the burden of producing evidence to establish each element of its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). In order for there to be "a genuine issue of material fact," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. The Court determines whether there is a sufficient factual disagreement or whether "it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In determining whether Hambrick is entitled to judgment as a matter of law, the Court will continue to view the

-6-

evidence, and draw all reasonable inferences, in a light most favorable to Ankele, the non-moving party.  See Dici v. Com. of Pa., 91 F.3d 542, 547 (3d Cir. 1996).

## III.    DISCUSSION

This civil rights case engenders the interplay between the interests of Ankele, and his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, and of Hambrick, and his right to be free of personal liability for actions taken while acting under color of state law.   Hambrick asserts his privilege of qualified immunity against Ankele's charges.  As the Supreme Court has noted, this doctrine provides Hambrick with "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Therefore, the Court will turn first to the issue of whether Hambrick is entitled to qualified immunity.

The defense of qualified immunity shields government officials performing discretionary acts from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, qualified immunity is not available where a plaintiff has alleged a violation of a constitutional right and the right was clearly established when violated. It is a defendant's burden to establish that he or she is entitled to qualified immunity.  Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

The Supreme Court of the United States held in Saucier that the ruling on qualified immunity must be undertaken using a two-step inquiry.  533 U.S. at 200-01.  This Court must begin its analysis by considering whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right.  See id. at 201.  "If the

plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001).

If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201. "The relevant dispositive inquiry" in making this determination is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. This does not entail identifying a generalized, abstract constitutional right such as the right to be free from unreasonable seizures. Rather, it requires that the Court determine on a more "particularized" level that it was "sufficiently clear that a reasonable official would understand that what he [was] doing violates that right." Id. Whether the facts alleged support a claim of a violation of clearly established law is a "purely legal" question for the Court. Johnson v. Jones, 515 U.S. 304, 313 (1995). With these standards in mind, the Court will proceed to analyze Ankele's claims.

## A.    FALSE ARREST UNDER THE FOURTH AMENDMENT

Ankele alleges that Hambrick violated his Fourth Amendment right to be free from unreasonable seizures by effectuating an arrest without probable cause. Probable cause is not needed on each and every offense that could be charged; probable cause is only needed for one of the offenses that may be charged under the circumstances. Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994); see also United States v. Bookhart, 277 F.3d 558, 565 n.10 (D.C. Cir. 2002) (collecting cases holding same). Here, Ankele was charged with three offenses: DUI, leaving the scene of an accident, and driving at an unsafe speed. Thus, if Hambrick had probable cause to arrest for any of these charges, he is entitled to summary judgment on Plaintiff's unlawful arrest claim.

-8-

Defendant argues that summary judgment is appropriate as to Plaintiff's false arrest claim because he does not allege an absence of probable cause to arrest Ankele for leaving the scene of the accident under 75 Pa. Cons. Stat. Ann. § 3743(a), or for driving at an unsafe speed under 75 Pa. Cons. Stat. Ann. § 3361.  Rather, Ankele only challenges the validity of the arrest insofar as it was carried out without probable cause to arrest for DUI.  See Amended Complaint ¶¶ 5-11. Defendant contends that this fact alone entitles him to summary judgment.  Although Plaintiff's Amended Complaint is inartfully drafted, this shortcoming alone is insufficient grounds to justify summary judgment in favor of Hambrick on Ankele's false arrest claim.

There is no support in the record for the notion that Hambrick arrested Ankele for leaving the scene of the accident.  To the contrary, nowhere does Hambrick represent that on the evening in question he arrested Ankele for leaving the scene of the accident (or for driving at an unsafe speed).  Rather, his deposition testimony focuses almost exclusively on his belief that the facts available to him at the accident scene gave rise to probable cause to arrest for DUI.  See Hambrick Dep. at 19-33.

In his pleadings before this Court, Hambrick now contends that the arrest for leaving the scene was valid.  However, Hambrick surely lacked legal authority to arrest Ankele for leaving the scene of the accident, and to the extent that the arrest was carried out for this violation of the Motor Vehicle Code, it was illegal.[2]

The Pennsylvania Motor Vehicle Code bars Hambrick from making an arrest for leaving the scene of an accident in these circumstances.  Under 75 Pa. Cons. Stat. Ann. § 6304(a),

_____

[2] This statement should not be read as a finding of liability on Count 1.  As noted, Plaintiff's Amended Complaint does not pursue a cause of action for "Illegal Arrest for Leaving the Scene" or "Illegal Arrest for Driving at an Unsafe Speed."  Rather, the Amended Complaint allegations are limited to charging Hambrick with carrying out an illegal arrest for DUI because he lacked probable cause to arrest for DUI.

a member of the Pennsylvania State Police may arrest a person *without a warrant* for a violation of

the Motor Vehicle Code only if (1) the officer is in uniform, and (2) the Motor Vehicle Code is

violated "in the presence of the police officer making the arrest." See also Commonwealth v. Kiner,

697 A.2d 262, 267-68 (Pa. Super. Ct. 1997) (section 6304(a) is "a general provision regarding arrest

powers under the Motor Vehicle Code"); Commonwealth v. Karl, 476 A.2d 908, 911 (Pa. Super. Ct.

1984) ("York police officers did not have the authority to make a lawful arrest for 'hit and run' - -

that is, leaving the scene of an accident after hitting an unattended vehicle - - because the incident

did not occur in the presence of the officers.").  There is no evidence in the record showing that

Ankele left the scene of the accident while Hambrick was present.  It is undisputed that Hambrick

arrived some time after Ankele parked his car in the parking lot and, as Wieder testified, began

walking away from the general area.[3]

Similarly, as to the third charge, Hambrick also would have been without authority

to arrest Ankele for driving at an unsafe speed under 75 Pa. Cons. Stat. Ann. § 3361 because there

is no evidence in the record to support such a charge.  In fact, Hambrick admitted that no one

complained about Ankele's speed prior to the accident.  Hambrick Dep. at 94-95.  Likewise, a police

officer may issue a summary offense citation for a violation of the Motor Vehicle Code only if he

has observed it himself or after an investigation of an incident, which clearly did not occur here.

Therefore, there existed no grounds to arrest Ankele for driving at an unsafe speed in violation of

---

[3] In fact, Hambrick testified that shortly after arriving on the scene, he observed Ankele and Wieder walking toward him and the accident scene.  Hambrick Dep. at 7, 97.  Even setting aside the requirements of § 6304(a), this admission casts considerable doubt on Hambrick's contention that he had probable cause to arrest Ankele for violation of 75 Pa. Cons. Stat. Ann. § 3743(a), which provides in relevant part:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle . . .
> shall immediately stop the vehicle at the scene of the accident or as close thereto as possible
> but shall forthwith return to and in every event shall remain at the scene of the accident until
> he has fulfilled [his duty to give information and render aid]. . . .

75 Pa. Cons. Stat. Ann. § 3361.

In arguing that Hambrick's warrantless arrest was valid, Defendant cites the inapposite case of Hughes v. Shestakov, No. Civ.A.00-6054, 2002 WL 1742666 (E.D. Pa. July 22, 2002). Hughes addresses whether police may make a warrantless arrest for a summary or misdemeanor offense on a probable cause determination alone. See id. at *2-4. It relies on state statutory and municipal provisions not applicable to the Motor Vehicle Code, which is the relevant statutory regime at issue here. In any event, the Hughes court determined that the state of the law was not clearly established on the issue presented, see id. at *4, while in the present case the governing statute, 75 Pa. Cons. Stat. Ann. § 6304(a), and case law are crystal clear.

Defendant's other argument on this point is similarly misguided. Somewhat extraordinary is Hambrick's contention that in fact Ankele was *not* arrested without a warrant on these charges, but rather as a result of a March 9, 2001 summons and complaint supported by an affidavit of probable cause. This argument is nonsensical. It is black letter law that a probable cause determination turns on the facts available to the arresting officer at the time of the arrest. See, e.g., Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997). Here, Plaintiff asserts that he was subjected to a false arrest on February 12, 2001. Whether Ankele was actually arrested for purposes of the Fourth Amendment on February 12, 2001 is not a question upon which reasonable minds could differ. Cf. Kaupp v. Texas, 123 S. Ct. 1843, 1845 (2003) (a Fourth Amendment seizure occurs when "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business") (citation and quotations omitted). That police later issued a criminal complaint and summons has absolutely nothing to do with whether it was illegal to arrest

Plaintiff on February 12, 2001.

Therefore, even though Ankele may have failed to contest the arrest on these specific grounds in his Amended Complaint, it is clear that Hambrick lacked legal authority to carry out the arrest for these alleged violations.  Accordingly, the Court will not enter judgment in favor of Defendant on Ankele's false arrest claim on this ground alone.  Rather, it will consider the merits of Ankele's claim that Hambrick lacked probable cause to arrest for DUI.  Although the existence vel non of probable cause is normally a factual issue for the jury, the Court may resolve the question where, as here, there are no genuine disputes of material fact in the record.  See Sharrar, 128 F.3d at 818; Fed. R. Civ. P. 56(c).

It is axiomatic that the "Fourth Amendment prohibits arrests without probable cause." Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).  In determining whether a constitutional violation exists, the Court will look to whether "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citation omitted).  "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

Because Hambrick asserts qualified immunity against Ankele's claim, the Court must first determine whether the facts alleged make out a constitutional violation, and it must examine those facts in the light most favorable to the Ankele.  See Saucier, 533 U.S. at 201.  That is, based on Ankele's version of events, as supported by record evidence that a reasonable jury might credit

-12-

at trial, did Hambrick arrest Ankele for DUI without sufficient probable cause?  The plaintiff bears

this initial burden of showing a constitutional violation.  Sherwood v. Mulvihill, 113 F.3d 396, 399

(3d Cir. 1997).

Here, Plaintiff presents the following evidence.  When Hambrick arrived at the scene

of the accident, Ankele and Wieder were talking in the parking lot of the Kuhnsville Inn, and soon

after began making their way across the street toward the scene of the accident.  When Ankele first

interacted with Hambrick near the police cruiser, Hambrick asked him if he was the other driver

involved in the accident, to which Plaintiff answered in the affirmative.  Ankele also admitted that

he had been drinking.[4]  Hambrick then immediately grabbed Plaintiff, slammed him onto the trunk

of the cruiser, and placed him in handcuffs.  Although Wieder did not see this interaction, he

confirms that very shortly after they arrived at the accident scene Hambrick had Ankele "on the

hood of the car."  Wieder Test. at 28.

Ankele disputes Hambrick's testimony that he had any trouble walking across the

street, or that he was staggering, although he concedes that his wife has described his natural walk

as "goofy" or as a "limp."  Ankele Dep. at 38-39.  Wieder testified that he was not paying attention

to how Ankele was walking.  Thus, taking this evidence in the light most favorable to Plaintiff, it

---

[4] In determining the initial motion for summary judgment, the Court noted some ambiguity in the record as to whether Ankele made such a statement *before* or *after* being taken into custody by Hambrick.  See 2003 WL 21223821, at *2, 2003 U.S. Dist. LEXIS 8817, at *6.  While Hambrick stated explicitly in his deposition that Hambrick admitted to consuming alcohol before the arrest, Hambrick Dep. at 23, 41, Plaintiff's deposition testimony was ambiguous on the timing of this admission.  See Ankele Dep. at 69.  As such, the Court construed this fact in the light most favorable to Plaintiff.  On this renewed motion, the chronology set forth in Trooper Hambrick's statement of facts clearly asserts that Ankele admitted to drinking prior to being handcuffed.  In response, Plaintiff makes no effort to come forward with a clarification, or to dispute Defendant's chronology.  To the contrary, Plaintiff admits on page three of his Brief in Opposition to Defendant's Renewed Motion that he told Hambrick that "he had a couple of beers."  Accordingly, Plaintiff has failed to come forward with specific facts showing there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  This additional fact is of utmost significance to the outcome of today's decision.

appears there was at least something about Plaintiff's walk that was out of the ordinary.

Hambrick testified that Ankele's eyes were red or blood-shot on the night of the accident. See Hambrick Dep. at 12, 40. Both Hambrick and Ankele testified that it was dark at the time of their encounter. Id. at 7; Ankele Dep. at 104. Ankele testified that Hambrick did not shine a light in his face, but he testified he was "sure" there were streetlights at the intersection or nearby. Id. at 104-05. Hambrick recalled the presence of outdoor lighting at three nearby businesses, and testified that it was "absolutely" light enough to see. Id. at 10-11. Ankele presents no evidence to contradict this assertion, arguing instead that the pace of events were too swift, and the light too little, to permit Hambrick to observe Ankele's eyes. Because the Court must draw all reasonable inferences in favor of Plaintiff, it is compelled to conclude that the facts of record could permit a jury to infer that it was too dark for Hambrick to see the color and quality of Ankele's eyes.

Hambrick contends that he smelled a "moderate odor of alcohol" about Ankele, Prelim. Hrg. at 16, but both Ankele and Wieder (who stood only three feet from Ankele) testified that there was no such odor present. Ankele Dep. at 70; Wieder Dep. at 26. No field tests were administered.

Accordingly, the Court must ask whether the objective facts available to Hambrick, as presented by Plaintiff's evidence, "warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle, 211 F.3d at 788. The Court concludes that they do. The undisputed facts are that Hambrick observed Plaintiff walking across the street and returning to the scene of a serious accident, and that there was something unusual about Plaintiff's manner of walking (be it a limp or otherwise). Upon confronting Ankele, Hambrick asked him if he was the driver of the other vehicle in the accident (i.e., the vehicle apparently at

fault).  Ankele stated that he was, and admitted that he had been drinking prior to the accident.

Hambrick then placed him under arrest.  Based on this evidence, the Court concludes that Hambrick

had sufficient knowledge to warrant a reasonable belief that Ankele had been driving "[w]hile under

the influence of alcohol to a degree which renders the person incapable of safe driving."  75 Pa.

Cons. Stat. Ann. § 3731(a).  Accordingly, Plaintiff has failed to make out a constitutional violation

under the Fourth Amendment, and summary judgment is appropriate as to Count 1.

      Even assuming Plaintiff could make out a constitutional violation, Plaintiff's false

arrest claim would still fail under the second step in the Saucier analysis.  At this step, the Court

must ask whether the contours of the constitutional right were clearly established on February 12,

2001, *i.e.*, "whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted."  533 U.S. at 202.  In other words, on February 12, 2001, would it be clear

to a reasonable officer investigating an accident involving "heavy" vehicle damage that it is

unlawful to arrest a person for DUI where that person (1) returns to the scene and admits he was the

driver of the car apparently at fault; (2) appears to be limping or staggering; and (3) admits he had

been drinking prior to the accident?  The Court concludes that it was not clearly established, and

thus summary judgment is appropriate as to Count 1.

      The undisputed facts of record show that the quantity and kind of indicators present

here - - a serious accident apparently caused by an individual who admits he had been drinking

before the accident, and who exhibits at least one objective sign of intoxication (an unusual gait) - -

are not so clearly insufficient that a reasonable officer in Hambrick's position would know that

arresting such individual would contravene the Fourth Amendment.  Qualified immunity protects

"all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475

-15-

U.S. 335, 341 (1986).  On this record, Hambrick is entitled to such protection.  A sampling of the case law construing probable cause in the DUI context supports this result.  See Commonwealth v. Guerry, 364 A.2d 700, 701-02 (Pa. 1976) (probable cause exists where driver tells police he drove vehicle involved in an accident, and officer detects strong odor of alcohol and glassy, bloodshot eyes); Commonwealth v. Klingensmith, 650 A.2d 444, 458 (Pa. Super. Ct. 1994) (police had probable cause to arrest for DUI when police observed that defendant had blood-shot eyes, smelled of alcohol, and failed field sobriety tests); Commonwealth v. Hamme, 583 A.2d 1245, 1247-48 (Pa. Super. Ct. 1990) (holding that when investigating accident, officer detects odor of alcohol and driver fails sobriety tests, probable cause for DUI exists); Commonwealth v. Benson, 421 A.2d 383, 387 (Pa. Super. Ct. 1980) ("strong probable cause" exists for DUI where police called to scene to investigate single car accident observed defendant's stumbling walk and mumbled speech, and detected odor of alcohol).

### B.    MALICIOUS PROSECUTION

Ankele's Amended Complaint advances two malicious prosecution claims.  Count Three relates to unsuccessful efforts to suspend Ankele's driver's license, and Count Four relates to the unsuccessful state court prosecution for DUI.  In sum, Ankele alleges that Hambrick destroyed exculpatory breath test results; failed to disclose exculpatory evidence to prosecuting authorities; omitted material information from his report; and then committed perjury at both the license suspension hearing and criminal prosecution by testifying falsely that Ankele refused to perform the tests.  Ankele advances these claims under the Fourth and Fourteenth Amendments, and seeks compensatory and punitive damages.

Defendant argues that a malicious prosecution claim cannot be asserted as a

substantive due process claim under the Fourteenth Amendment.  Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it.  Therefore, summary judgment is appropriate insofar as Counts Three and Four proceed under the Fourteenth Amendment.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Saunders v. City of Philadelphia, Civ. A. No. 02-966, 2003 WL 21652241, at *2, 2003 U.S. Dist. LEXIS 12048, at *7 n.2 (E.D. Pa. July 1, 2003) (holding that § 1983 plaintiff who responds to motion for summary judgment by arguing only a violation of substantive due process waives any argument that any other constitutional, federal or state law rights were violated).

Accordingly, Plaintiff's malicious prosecution claims must proceed, if at all, under the Fourth Amendment.  As with Plaintiff's false arrest claim, the Court must analyze this claim under Saucier's two-step inquiry.  533 U.S. at 201.  The first question is whether the facts alleged, taken in the light most favorable to Ankele, show that Hambrick's conduct violated a constitutional right.  Of course, Fourth Amendment protections in the malicious prosecution context are limited to actions occurring between arrest and pretrial detention.  Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir. 1998).

In order to prove his § 1983 malicious prosecution claim, Ankele must show:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  Here, Plaintiff cannot show that he

suffered a seizure "as a consequence of a legal proceeding." This case falls squarely within the Third Circuit's decision in Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998). There, the court of appeals concluded that Gallo was "seized" for purposes of the Fourth Amendment as a consequence of the restrictions placed on his post-indictment liberty, including: (1) a $10,000 personal recognizance bond; (2) required attendance at all court hearings, including trial and arraignment, over a period of eight months; (3) required weekly contact with Pretrial Services; and (4) prohibition on travel outside New Jersey and Pennsylvania. See id. at 219, 222. Because "Gallo's liberty was constrained in multiple ways for an extended period of time," the court concluded that such restrictions constituted a seizure implicating the Fourth Amendment. Id. at 225. However, the court deemed these circumstances to present a "close question." Id. at 222.

The restrictions associated with the legal proceedings against Ankele do not rise to the level of restraint imposed in Gallo, and thus do not constitute a seizure for purposes of the Fourth Amendment. On February 12, 2001, Ankele was in custody for approximately thirty to forty-five minutes at the state police barracks. A summons and complaint issued on March 9, 2001, charging Ankele with the three violations discussed above, and requiring his attendance in court. He appeared for a June 6, 2001 preliminary hearing, where he was ordered to post a $2,000 unsecured bond. He also appeared for one day each at his January 14, 2002 license suspension appeal and his January 18, 2002 criminal trial. He was never incarcerated, restricted to a geographic area, compelled to contact pre-trial services, or deprived of his driver's license. Significantly, two of the four factors found in Gallo are absent here. That Ankele was free to travel without geographic limitation is particularly significant because that factor was specially noted in Gallo. See 161 F.3d at 224 (noting Second Circuit's agreement "that pretrial restrictions on travel and required

-18-

attendance at court hearing constitute a seizure") (citing <u>Murphy v. Lynn</u>, 118 F.3d 938, 945 (2d Cir. 1997)). Accordingly, these restrictions do not amount to a seizure for purposes of the Fourth Amendment. <u>See Mantz v. Chain</u>, 239 F. Supp. 2d 486, 501-04 (D.N.J. 2002) (finding no Fourth Amendment seizure where plaintiff was required to appear in court but was otherwise unrestrained); <u>Bristow v. Clevenger</u>, 80 F. Supp. 2d 421, 429-30 (E.D. Pa. 2000) (finding no Fourth Amendment seizure where plaintiff was fingerprinted and photographed, attended a pretrial conference, and attended judicial proceeding to expunge her criminal record). Having failed to make out a constitutional violation, summary judgment on Ankele's malicious prosecution claims is warranted.

Even assuming Ankele was seized for purposes of the Fourth Amendment, his malicious prosecution claims still cannot withstand Defendant's motion for summary judgment because he cannot show that Hambrick initiated the proceedings without probable cause. <u>See Estate of Smith</u>, 497 F.3d at 521-22 (affirming grant of summary judgment on malicious prosecution claim where police had probable cause to arrest); <u>Schertz v. Waupaca County</u>, 875 F.2d 578, 582 (7th Cir. 1989) ("[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution); <u>Douris v. County of Bucks</u>, No. Civ.A.99-3357, 2001 WL 767579, at *12 (E.D. Pa. July 3, 2001) (granting summary judgment on malicious prosecution claim where plaintiff could not show defendants instituted criminal proceeding without probable cause). As explained <u>supra</u>, Hambrick had probable cause to arrest Ankele for DUI on February 12, 2001, and thus Plaintiff cannot show an essential element of his malicious prosecution claim. For this additional reason, summary judgment is appropriate as to

Counts Three[5] and Four.[6]

An appropriate Order follows.

---

[5] Count Three of the Amended Complaint fails for an additional reason. There, Plaintiff alleges malicious prosecution in connection with efforts to suspend his driver's license. However, because a license suspension proceeding is not "a criminal proceeding," Plaintiff cannot establish the first essential element of a malicious prosecution claim. Witsch Motor Vehicle Operator's License Case, 168 A.2d 772, 775 (Pa. Super. Ct. 1961) ("A hearing on the question of suspension is *not a criminal procedure*. The question is whether the operator may continue to exercise a privilege.") (emphasis added).

[6] To the extent Ankele seeks damages arising from Hambrick's testimony at his preliminary hearing, trial, or license suspension proceeding, Hambrick is entitled to absolute immunity, and thus summary judgment is appropriate. It is well settled that police officers are absolutely immune from § 1983 suits for damages for allegedly giving perjured testimony at a criminal trial. See Briscoe v. LaHue, 460 U.S. 325, 344-49 (1983); see also Ernst v. Child and Youth Servs., 108 F.3d 486, 494 (3d Cir. 1997) (reviewing Supreme Court precedents on absolute immunity and noting that judges, prosecutors, and witnesses "are entitled to absolute immunity when they perform judicial or quasi-judicial acts that are integral parts of the judicial process"). The Third Circuit has extended this principle to the pretrial stage of the judicial process, which would include a preliminary hearing. See Williams v. Hepting, 844 F.2d 138, 141 (3d Cir. 1988).

Regarding the license suspension proceeding, Ankele offers no authority for the proposition that absolute immunity should not extend to a civil proceeding such as a license revocation hearing. To be sure, adjudications in an administrative setting share many of the characteristics of the judicial process, including the protections of due process. See Butz v. Economou, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."); see also Mackey v. Montrym, 443 U.S. 1, 19 (1979) ("a person's interest in his driver's license is property that a state may not take away without satisfying the requirements of the due process guarantee of the Fourteenth Amendment"). In both judicial and administrative proceedings, the police officer is performing his public duty, and permitting a subsequent suit against him "might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." Brisco, 460 U.S. at 343. Because a license revocation appeal hearing is judicial in nature, the same immunity applies. See Ernst, 108 F.3d at 495 (in determining whether conduct is entitled to immunity, courts must look for a "functional tie" between the conduct and the judicial process) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 271-72 (1993)). Accordingly, Ankele is precluded from pursuing his due process claim on the basis of Hambrick's allegedly false testimony at the license revocation hearing.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **ADAM ANKELE** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **No. 02-4004** |
| **v.** | : | |
| | : | |
| **MARCUS HAMBRICK** | : | |
| **Defendant** | : | |
| | : | |

## ORDER

**AND NOW**, this 8th day of October, 2003, upon consideration of Defendant's Renewed Motion for Summary Judgment [Doc. # 36], Plaintiff's Opposition thereto [Doc. # 37], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendant's Motion is **GRANTED**.

Judgment is hereby **ENTERED** in favor of Defendant Marcus Hambrick and against Plaintiff Adam Ankele on all counts of the Amended Complaint, and this matter is **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to mark this case closed for administrative purposes.

It is so **ORDERED**.

**BY THE COURT:**

_____

**CYNTHIA M. RUFE, J.**